UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MOHAMMED PROCTOR,

                       Plaintiff,

- against -

TOWN OF SOUTHAMPTON, TOWN OF
SOUTHAMPTON POLICE DEPARTMENT,
VINCENT CAGNO, SERGEANT
KIERNAN, ERIC SICKLES and
"JOHN DOES 1-13",

                       Defendants.
------------------------------------------------------------------------X

Case No.: 10-CV-5981
(SJF)(AKT)

**DEFENDANTS'**
**TRIAL MEMORANDUM**

## BACKGROUND

The plaintiff was arrested by Southampton Town police officers on April 21, 2010 and charged with Criminal Possession of a Controlled Substance in the Third, Fourth and Seventh Degree, Unlawful Possession of Marijuana, two counts of Criminally Using Drug Paraphernalia in the Second Degree and Endangering the Welfare of a Child. The search of the plaintiff was as a result of plaintiff's admission that he had marijuana in his possession and as a result of a search warrant. The search of the premises was as a result of a search warrant.

Plaintiff's criminal defense attorney challenged the sufficiency of the facts in support of the search warrant. Following a hearing, the Honorable James F.X. Doyle upheld the search warrant and denied the plaintiff's (defendant therein) motion to suppress all evidence obtained as a result of the execution of the search warrant. Plaintiff was indicted by superceding indictment of twelve criminal counts, as follows: three counts of Criminal Sale of a Controlled Substance in the Third Degree, four counts of Criminal Possession of a Controlled Substance in the Third Degree, one count of Criminal Possession of a Controlled Substance in the Fourth Degree, one count of Criminal Possession of a Weapon in the Third Degree, two counts of Criminally Using Drug Paraphernalia in the Second Degree, and one count of Unlawful Possession of Marijuana. On July 13, 2011, by allocution in open court, the plaintiff pled guilty to the entire indictment.

Plaintiff was sentenced and incarcerated in a state correctional facility.

On May 25, 2012 the conviction was dismissed, upon the District Attorney's consent pursuant to Criminal Procedure Law Section 440.10.  The District Attorney's Office moved to dismiss the indictment pursuant to Criminal Procedure Law 210.40 in the interest of justice and Justice Doyle granted the people's motion.  This motion was made because "certain facts have recently come to the attention of the district attorney's office regarding a police officer who participated in the investigation in this case."  Following plaintiff's conviction, the police department and the District Attorney's Office became aware that the officer who secured the search warrant had likely become dependent on prescription pain killers, and perhaps was at the time of his involvement in the incident leading to plaintiff's arrest.  Had the prosecutor been aware of this issue, this would have had to have been disclosed to the criminal defense counsel.  It was not disclosed since at the time that the plaintiff pled guilty, on July 13, 2011, the parties did not have that information.

Plaintiff commenced this litigation prior to his guilty plea by filing a complaint on December 17, 2010.  The second amended complaint was filed on July 19, 2012.  Plaintiff alleges false arrest and imprisonment, unlawful search and seizure, excessive force, cruel and unusual punishment, a Fifth Amendment violation, malicious prosecution, malicious abuse of process, intentional infliction of emotional distress, assault and battery, negligence and a <u>Monell</u> custom and practice claim against the Town of Southampton and its police department.

Defendants by their answer denied the allegations and interposed a qualified immunity defense in addition to other affirmative defenses.

## POINT I

## PLAINTIFF CANNOT ESTABLISH A
## CLAIM FOR FALSE ARREST

The elements of a false arrest claim under § 1983 are substantially the same as the elements of a false arrest claim under New York law. *See* Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir.2003) (*citing* Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir.1992)).  Under New York law, the elements of false arrest that a plaintiff must prove are: (1) the defendant intended to confine plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged.  Martinez v. Schenectady, 97 N.Y.2d 78, 761 N.E.2d 560, 735 N.Y.S.2d 868 (2001); Broughton v. State, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975), *cert. denied*, 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975).

Here, there is no dispute as to the first three elements, meaning that our defense will focus on the fact that the confinement of plaintiff was privileged.  Plaintiff's position appears to be that because his conviction was vacated, there was no probable cause to arrest him.  However, plaintiff's claim for false arrest must fail because the officers had probable cause to arrest, not only on the warrant, but also on plaintiff's admission that he had "weed" in his possession.  Here, Proctor was charged with multiple crimes, including possession of a controlled substance in the fourth degree, possession of drug paraphernalia in the second degree and criminal possession of a weapon in the third degree.  He was also charged, in relevant part, with possession of marijuana.

Based on Proctor's own testimony and the facts contained within plaintiff's complaint, amended complaint and second amended complaint, the police had independent probable cause to arrest him for possession of marijuana under section 221.05 of the Penal Law by virtue of his voluntary admission that he had same on his person.  *See* Mistretta v. Prokesch, 5 F.Supp.2d 128,

3

133 (E.D.N.Y. 1998); Devenpeck v. Alford, 543 U.S. 146, 153, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004). In Devenpeck, the Supreme Court rejected the view that probable cause to arrest must be predicated upon the offense invoked by the arresting officer, or even upon an offense "closely related" to the offense invoked by the arresting officer, and stated that the "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." Id., *see also* United States v. Jones, 432 F. 3d 34, 41 (1st Cir. 2005). Probable cause depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest, and the inquiry is objective rather than subjective. Devenpeck, supra, at 152-153.

Following Devenpeck, the Second Circuit held that a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and it is not relevant whether probable cause existed with respect to each individual charge, or indeed any charge, actually invoked by the arresting officer at the time of arrest. Stated differently, when faced with a claim of false arrest, the Court focuses on the validity of the arrest, and not on the validity of each charge. Jaegly v. Couch et al, 439 F. 3d 149 (2d Cir. 2006).

Therefore, even assuming that the police did not have probable cause to arrest plaintiff for the more serious crimes he was ultimately charged with, they did have objective probable cause to make an arrest based on the offense of possession of marijuana. Probable cause does not require an awareness of a particular crime, but only that some crime may have been committed. Jaegly, *supra*, *quoting* Wallace v. City of Albany, 283 A.D. 2d 872, 873 (3d Dep't 2001). Since the police had probable cause to believe that Proctor had committed a crime, they properly arrested him. Any claim by plaintiff that his rights were violated by virtue of the fact that he was placed under arrest, rather than simply being given an appearance ticket, is also without merit. The law is well settled that where a police officer has reasonable cause to believe that a person is committing an offense in the officer's presence, Criminal Procedure Law

§§140.10(1)(a) and 140.10(2) authorize the police officer to arrest that person. People v. Gonzalez, 109 Misc.2d 448, 439 N.Y.S.2d 970 (1980).

## POINT II

## PLAINTIFF'S MALICIOUS PROSECUTION CLAIMS SHOULD BE DISMISSED

In order to prevail on a claim for malicious prosecution, Proctor must establish that 1) the Town commenced or continued a criminal proceeding against him, 2) the proceeding was terminated in his favor, 3) there was no probable cause for the criminal proceeding, and 4) the Town initiated the criminal proceedings out of actual malice. DiBlasio v. City of New York, 102 F.3d 654, 657 (2d Cir. 1996). Proctor cannot establish the requisite elements; as such, his claim of malicious prosecution must be dismissed. See Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003).

As set forth more fully above, the police had probable cause for the criminal proceeding based on Proctor's own testimony and the facts contained within plaintiff's complaint, amended complaint and second amended complaint, wherein he admitted and advised that the officers became aware of a cellophane baggie secreted in his rectum during a search incident to his arrest.

Furthermore, and more importantly, a plaintiff alleging the constitutional tort of malicious prosecution in an action pursuant to § 1983 must establish termination of the prosecution in his favor in accordance with applicable state law. See Singleton v. City of New York, 632 F.2d 185, 195 (2d Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). The documents from the District Attorney's office establish that the criminal proceedings did not terminate in Proctor's favor, as required to state a malicious prosecution claim. According to the file, Judge Doyle dismissed the indictment pursuant to Criminal Procedure Law §210.40, which dismissal is a "Dismissal in furtherance of justice." Dismissals under this section do not bar resubmission to the same or another grand jury, and moreover, **are**

5

**neither an acquittal of the charges nor any determination of the merits. Rather, it leaves the question of guilt or innocence unanswered**. Ryan v. New York Tel. Co., 62 N.Y.2d 494, 505 (1984) (emphasis added); People v. Rickert, 58 N.Y.2d 122, 126 (1983); People v. Clayton, 41 A.D.2d 204, 206 (2d Dep't 1973). Consequently, as a matter of law, it cannot provide the favorable termination required as the basis for a claim of malicious prosecution. Singer v. Fulton County Sheriff, 63 F.3d 110 (2d Cir. 1995); Hygh v. Jacobs, 961 F.2d 359, 368 (2d Cir.1992); *see also* Jackson v. County of Nassau, 123 A.D.2d 834, 834, 507 N.Y.S.2d 449, 450 (2d Dep't 1986) *appeal denied*, 69 N.Y.2d 608, 509 N.E.2d 358, 516 N.Y.S.2d 1023 (1987); Miller v. Star, 123 A.D.2d 750, 751, 507 N.Y.S.2d 223, 224 (2d Dep't 1986).

"Where the prosecution did not result in an acquittal, it is deemed to have ended in favor of the accused, . . . only when its final disposition is such as to indicate the innocence of the accused." Murphy v. Lynn, 118 F.3d 938, 948 (2d Cir. 1997). In this case, the indictment was dismissed based upon knowledge which the police department and prosecutor's office became aware of after plaintiff's plea, that the officer who secured the search warrant had likely become dependent on prescription pain killers, and perhaps was so dependent at the time. Had the people been aware of this issue at the time of the criminal trial, such information would have had to have been disclosed to plaintiff's criminal defense counsel. The fact that this information was not disclosed, does not indicate the plaintiff's innocence in any way. The decision which dismisses the indictment in the interest of justice is far from being indicative of innocence. *See*, Loeb v. Teitelbaum, 77 A.D.2d 92, 101, 432 N.Y.S.2d 487, 494 (2d Dep't. 1980); MacFawn v. Kresler, 88 N.Y.2d 859, 860, 644 N.Y.S.2d 486, 487, 666 N.E.2d 1359, 1360 (1996) (Court of Appeals found that plaintiff failed to state a claim of malicious prosecution arising from the dismissal of the criminal complaint pursuant to New York Criminal Procedure Law §§ 170.30 (1)(a) and 170.35(1)(a) because the dismissal was on procedural grounds).

Accordingly, plaintiff's malicious prosecution claim must be dismissed.

6

# POINT III

## PLAINTIFF'S CLAIM OF UNREASONABLE SEARCH AND SEIZURE DOES NOT CONSTITUE A CONSTITUTIONAL VIOLATION UNDER 42 U.S.C. §1983

Proctor alleges that the police unlawfully conducted a warrantless body cavity search, and improperly obtained other evidence without a valid warrant. Thereafter, plaintiff pled guilty to the crimes he was accused of, allegedly under duress. Plaintiff's conviction and sentence was later vacated based upon a later discovered problem with the officer who swore out the warrant. As a result, the District Attorney's Office moved to dismiss the criminal case against Proctor.

Plaintiff does not have a § 1983 claim stemming from this search and seizure[1]. When the evidence that is proffered in court is the result of an unlawful search and seizure, the evidence is excluded under the "fruit of the poisonous tree" doctrine which solely applies in the context of criminal procedure. Pennsylvania Bd. of Probation & Parole v. Scott, 524 U.S. 357, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998). This doctrine excludes evidence which was wrongfully obtained as a consequence of unlawful official acts. The exclusionary rule is invoked "to deter future unlawful police conduct." United States v. Calandra, 414 U.S. 338, 347, 94 S.Ct. 613, 619-20, 38 L.Ed.2d 561 (1974); United States v. Janis, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). The fruit of the poisonous tree doctrine "is a judicially created remedy designated to

---

[1] There is also an argument to be made that he doesn't have a 1983 claim for any constitutional violation on this basis. "Townes involved a Fourth Amendment claim, but there is no reason to read Townes as so limited." Wray v. City of New York, 490 F.3d 189, 194 (2d Cir. 2007). The holding in Townes rests on the broad principles that [i] "the goal of the Court's § 1983 jurisprudence has been to tailor liability to fit the interests protected by the particular constitutional right in question," and [ii] " § 1983 damages should be made available only for risks that are constitutionally relevant." Townes, 176 F.3d at 148; Zahrey, 221 F.3d at 350-51(stating that a § 1983 court is concerned with the "legally cognizable result" of misconduct).

safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved. Calandra, supra, 414 U.S. at 348, 94 S.Ct. at 620.

Townes v. City of New York is directly on point. Plaintiff in Townes v. City of New York, 176 F.3d 138 (2d Cir. 1999), cert. denied 528 U.S. 964, 120 S.Ct. 398, 145 L.Ed.2d 311 (1999) brought a 42 U.S.C. §1983 action alleging that, during a police stop of a taxicab in which he was a passenger, the officers unlawfully searched him and the taxicab. He was arrested after the police found handguns in the cab and narcotics on his person. Towne's motion to suppress in the criminal proceeding was denied, after which he entered a plea of guilty and was jailed. More than two years later, the Appellate Division reversed the conviction on the ground that the police lacked probable cause to stop and search the taxicab. People v. Victor, 149 A.D.2d 363, 540 N.Y.S.2d 670 (1st Dep't 1989). The New York Court of Appeals later remitted the case to the New York Supreme Court for a hearing on the original motion to suppress. People v. Victor, 74 N.Y.2d 874, 547 N.Y.S.2d 831, 547 N.E.2d 86 (1989). Eventually, the indictment was dismissed.

Townes commenced a federal civil rights action thereafter, pleading: (1) claims against each of the individual police officers under 42 U.S.C. § 1983 for violating his Fourth Amendment rights, and a § 1983 claim against the City for failing to train or supervise the individual police officers.

The court held that the fruit of the poisonous tree doctrine did not extend to §1983 actions. The court stated, in pertinent part:

> No Fourth Amendment value would be served if Townes, who illegally possessed firearms and narcotics reaps the financial benefit he seeks. Townes has already reaped an enormous benefit by reason of the illegal seizure and search to which he was subjected: his freedom, achieved by the suppression of evidence obtained in violation of the Fourth Amendment.

8

Townes, supra, 176 F.3d 148. The Second Circuit Court of Appeals concluded that victims of unreasonable searches and seizures "cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." Proctor, like Townes, reaped the benefit of the unlawful search because his criminal charges were dropped and he was released from prison, and we will argue that he has no valid civil rights claim based upon the allegedly unlawful search.

The Townes court also noted that plaintiff's case failed for an independent reason: under common law negligence principles, Townes's conviction and incarceration were not proximately (or legally) caused by the defendants' constitutional torts. The Court held, as a matter of law, the unconstitutional seizure and search of Townes's person was not a proximate cause of his conviction because of (at least) one critical circumstance: the trial court's refusal to suppress the evidence, which was an intervening and superseding cause of Townes's conviction. The Court specifically held that damages resulting from an arrestee's conviction and incarceration for possession of weapons and drugs were not proximately caused by the police officers' alleged violation of the arrestee's Fourth Amendment rights, so the arrestee could not recover damages for conviction and incarceration in a § 1983 action. Townes, supra.

This case is analogous to Townes, as Proctor likewise challenged the search and the voluntary nature of his statement, and the judge denied his motions. Although later Second Circuit cases analyzing Townes recognized limited exceptions where later events might not break the chain of causation – such as an instance where a judge's decision to issue an arrest warrant did not break the chain where a police officer submitted an affidavit which a reasonably well trained officer in the same position would have known failed to establish probable cause, or where the intervening decision maker (judge, prosecutor, grand jury) was misled or coerced – those narrow exceptions are not applicable here. *C.f.* Zahrey v. Coffey, 222 F. 3d 342 (2d Cir.

2000) (holding defendants in 1983 actions can be liable for consequences caused by "reasonably forseeable intervening forces"); Higazy v. Templeton, 505 F. 3d 61 (2d Cir. 2007);.

Further, it must be emphasized that the plaintiff's guilty plea to the criminal charges was also a break in the chain of causation. The Court did not reach the issue of the guilty plea in Townes, because they found the break in the chain before the guilty plea, when the judge denied suppression of the seized evidence. However, later cases analyzing Townes have held that a guilty plea constitutes a "superseding cause of a plaintiff's conviction and imprisonment," and as such, police defendants cannot be held liable under § 1983 for damages arising out of Plaintiff's conviction and incarceration. This is because "the chain of causation" between Defendant's purportedly unlawful activity and Plaintiff's "subsequent conviction and incarceration is broken by [Plaintiff's] intervening exercise of independent judgment" to plead guilty. Townes, *supra*; *see also* Hayes v. Perotta, No. 09–CV–2458 (KMK), 2010 U.S. Dist. LEXIS 124187, \*17 (S.D.N.Y. Sept. 30, 2010) (applying Townes to hold that plaintiff failed to state a claim under §1983 against defendant because plaintiff's guilty plea constituted a superseding cause of his conviction and incarceration); Barmapov v. Barry, 09-CV-03390 RRM RML, 2011 WL 32371 (E.D.N.Y. Jan. 5, 2011); *see also* Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); Haring v. Prosise, 462 U.S. 306, 321, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983) ("When a defendant is convicted pursuant to his guilty plea rather than a trial, the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized. State law treats a guilty plea as 'a break in the chain of events ....' " (quoting Tollett, 411 U.S. at 267, 93 S.Ct. 1602)).

To recover for wrongful conviction, plaintiff had the option of filing under the Court of Claims Act § 8-b. Given that he did not go that route, he cannot bring a § 1983 action on this basis.

## POINT IV

## PLAINTIFF'S CLAIM OF EXCESSIVE FORCE MUST BE DISMISSED.

NEGLIGENT ASSAULT:

Plaintiff's complaint alleges excessive force, as well as negligent assault. The claim for assault through negligence is not cognizable. New York has adopted the prevailing modern view that, once intentional offensive contact has been established, the actor is liable for assault and not negligence, even when the physical injuries may have been inflicted inadvertently. Trott v Merit Dept. Store, 106 A.D.2d 158, 160, 484 N.Y.S.2d 827 (1st Dep't. 1985). 'There is, properly speaking, no such thing as a negligent assault'. Mazzaferro v Albany Motel Enters., 127 A.D.2d 374, 376, 515 N.Y.S.2d 631 (3d Dep't. 1987).

EXCESSIVE FORCE:

Excessive force claims are analyzed under the Fourth Amendment's objective "reasonableness" standard in view of the totality of the circumstances. To determine if the use of force is reasonable, courts balance "the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interests at stake". Graham v. Conner, 490 U.S. 386, 388, 109 S.Ct. 1965, 104 L.Ed.2d 443 (1989); Otero v. Town of Southampton, 194 F.Supp.2d 167, 180 (E.D.N.Y. 2002); Mckenna v. Hughes, 2008 WL 216613 (E.D.N.Y. 2008). Furthermore, the reasonableness of the officers' belief should be judged from an on scene prospective. Calamia v. City of New York, 879 F.Supp.2d 1025, 1034-1035 (2d Cir. 1989). Generally, the force used by the defendants must be more than *de minimis* in order for the plaintiffs' claim to be actionable. Graham, 490 U.S. at 397; Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993). However a plaintiff need not sustain severe injury to maintain a claim

11

that the use of force was objectively unreasonable under the Fourth Amendment.  Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004).

Plaintiff claims that he was subjected to excessive force when the officer(s) pushed his hands which were cuffed behind his back up into the air and yanked the bag containing crack cocaine out of his rectum.  He will also claim that in response to a request to see the warrant, that one of the officers punched him in the midsection.

First, we note that the officers will testify that there was no forcible rectal search or punch to plaintiff's stomach, as such, in accordance with the officers' recitation of the facts, there can be no claim for excessive force in connection with that search.  It will not be disputed that there are no medical records or police department or County Sheriff's Department records that indicate that the plaintiff was injured in any way.   Plaintiff received no medical treatment while in the custody of the town and a day following the arrest when in the custody of the Suffolk County Sheriff.

## POINT V

### PLAINTIFF'S CLAIM THAT HE WAS DENIED MEDICAL CARE MUST BE DISMISSED

Although plaintiff's complaint appears to set forth his denial of medical care claim under both the 8th Amendment (cruel and unusual punishment) and 14th Amendment, in the Second Circuit, claims arising prior to actual conviction or even arraignment are assessed under the Fourteenth Amendment. Mills v. Fenger, 216 Fed.Appx. 7, 10 (2d Cir. 2006) (holding that such claims, when they occur in the course of pretrial arrest and detainment, are evaluated under the Due Process Clause of the Fourteenth Amendment); Nance v. New York City Police Dep't ex rel McKaw, 2003 WL 1955164 at *4 (E.D.N.Y 2003) (applying Fourteenth Amendment standard to denial of proper medical care while in police custody)

12

To prevail on a claim that one's constitutional rights were violated due to denial of medical care, the plaintiff must demonstrate: (1) that an official denied him treatment needed to remedy a serious medical condition; and (2) that the official did so because of his deliberate indifference to that need. *See* Mills, 216 Fed. Appx. at 10. Factors to be considered in determining whether a condition is serious enough include: "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain". Id. The plaintiff must also show that the defendants acted with reckless disregard for the substantial risk posed by plaintiff's serious medical condition which also requires an analysis of what the defendants knew or should have known. Morales v. Mackalm, 278 F.3d 126, 132 (2d Cir. 2002). Deliberate indifference to a detainee's serious medical needs is actionable under §1983 if the plaintiff can prove that his inadequate medical care was more than merely negligent. Nance v. New York City Police Dept. ex rel. McKay Chung, 2003 WL 1955164 at *4 (E.D.N.Y. 2003).

Some factors that courts have used in determining police officer liability include when the detainee requested medical care and whether there was a clear manifestation of illness or injury necessitating medical intervention. *See* Cooper v. City of Hartford, 2009 WL 2163127 (D. Conn. 2006) (officers were deliberately indifferent to the medical needs of a gunshot victim who repeatedly asked for medical care); Weyant v. Okst, 101 F3d 845, 857 (2d Cir 1996) (finding deliberate indifference where [detainee] was pale, dizzy, perspiring profusely, trembling uncontrollably, hardly able to talk, and repeatedly losing consciousness; and that [the officer] was informed that [the detainee] was in insulin shock).

In this case, Proctor did not appear to be in any distress, and it is respectfully submitted that the condition he alleges was not serious. There was no clear manifestation of injury. Even assuming, *arguendo*, that Proctor was suffering from a serious medical condition at the time of

13

the arrest, the defendants cannot be charged with knowing what, if any, medical condition he was experiencing, given the nature and location of the complaint (rectal pain/bleeding). As such, they cannot be found to have recklessly disregarded the potential risk of denying him medical treatment.

## POINT VI

### THE ALLEGED VIOLATION OF PLAINTIFF'S FIFTH AMENDMENT RIGHTS DO NOT CONSTITUTE A CONSTITUTIONAL VIOLATION ACTIONABLE UNDER 42 U.S.C. § 1983

In the Fifth Amendment context, the Court has created prophylactic rules designed to safeguard the core constitutional right protected by the Self–Incrimination Clause. *See, e.g.,* Michigan v. Tucker, 417 U.S. 433 at 444, 94 S.Ct. 2357 (describing the "procedural safeguards" required by Miranda as "not themselves rights protected by the Constitution but ... measures to insure that the right against compulsory self-incrimination was protected" to "provide practical reinforcement for the right"); Oregon v. Elstad, 470 U.S. 298, 105 S. Ct. 1285 (1985) (stating that "the Miranda exclusionary rule ... serves the Fifth Amendment and sweeps more broadly than the Fifth Amendment itself"). Among these rules is an evidentiary privilege that protects witnesses from being forced to give incriminating testimony, even in noncriminal cases, unless that testimony has been immunized from use and derivative use in a future criminal proceeding before it is compelled. Maness v. Meyers, 419 U.S. 449, 461–462, 95 S.Ct. 584 (1975) (noting that the Fifth Amendment privilege may be asserted if one is "compelled to produce evidence which later may be used against him as an accused in a criminal action" (emphasis added)).

Prophylactic rules designed to safeguard a constitutional right, however, do not extend the scope of the constitutional right itself, just as violations of judicially crafted prophylactic rules do not violate the constitutional rights of any person. Courts have allowed the Fifth Amendment privilege to be asserted by witnesses in noncriminal cases in order to safeguard the

core constitutional right defined by the Self–Incrimination Clause—the right not to be compelled in any criminal case to be a witness against oneself, and likewise, Courts have established the Miranda exclusionary rule as a prophylactic measure to prevent violations of the right protected by the text of the Self–Incrimination Clause—the admission into evidence in a criminal case of confessions obtained through coercive custodial questioning.  If those prophylactic rules are not complied with, the remedy is suppression of the evidence, not a §1983 claim. Chavez v. Martinez, 538 U.S. 760, 770-73, 123 S. Ct. 1994, 2003-04, 155 L. Ed. 2d 984 (2003), citing Warren v. Lincoln, 864 F.2d 1436, 1442 (8th Cir. 1989) (alleged Miranda violation not actionable under § 1983); Giuffre v. Bissell, 31 F.3d 1241, 1256 (3d Cir. 1994) (same); Bennett v. Passic, 545 F.2d 1260, 1263 (10th Cir. 1976) (same); *see also* New York v. Quarles, 467 U.S. 649, 686, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984) (Marshall, J., dissenting) ("All the Fifth Amendment forbids is the introduction of coerced statements at trial").

Accordingly, the alleged violation by the Town and its officers of Proctor's Fifth Amendment privilege against self incrimination cannot be grounds for a § 1983 action. Connecticut v. Barrett, 479 U.S. 523, 528, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987) (Miranda 's warning requirement is "not itself required by the Fifth Amendment ... but is instead justified only by reference to its prophylactic purpose"); Tucker, *supra*, at 444, 94 S.Ct. 2357 (Miranda's safeguards "were not themselves rights protected by the Constitution but were instead measures to insure that the right against compulsory self-incrimination was protected").

**POINT VI**

**ANY AND ALL STATE LAW CLAIMS
SHOULD BE DISMISSED BASED ON PLAINTIFF'S
<u>FAILURE TO COMPLY WITH THE GENERAL MUNICIPAL LAW</u>**

In order to commence a tort action against a municipality, a notice of claim must be served within 90 days after the claim accrues.  General Municipal Law § 50-e provides, in pertinent part:

15

> (a)  In any case founded upon tort where a Notice of Claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation . . . the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety (90) days after a claim arises. . .
>
> 5.  Application for leave to serve a late notice.  Upon application, the court, in its discretion, may extend the time to serve a notice of claim specified in paragraph (a) of subdivision one . . . In determining whether to grant the extension, the court shall consider, in particular, whether the public corporation or its attorney or its insurance carrier acquired actual knowledge of the essential facts constituting the claim within the time specified in subdivision one or within a reasonable time thereafter.  The court shall also consider all other relevant facts and circumstances, including: whether the claimant was an infant, or mentally or physically incapacitated, or died before the time limited for service of the notice of claim; whether the claimant failed to serve a timely notice of claim by reason of his justifiable reliance upon settlement representations made by an authorized representative of the public corporation or its insurance carrier; whether the claimant in serving a notice of claim made an excusable error concerning the identity of the public corporation against which the claim should be asserted; and whether the delay in serving the notice of claim substantially prejudiced the public corporation in maintaining its defense on the merits.

The timely service of a notice of claim is a condition precedent to the commencement of an action against a municipality, and the failure to comply with the general municipal law is a jurisdictional rather than a procedural defect.  *See* Silberstein v. County of Westchester, 92 A.D.2d 867, 459 N.Y.S.2d 838 (2d Dep't 1983). Town Law § 67 provides that any claim which may be made against the town or town superintendent of highways for damages for wrong or injury to person or property or for the death of a person, shall be made and served in compliance with the above-cited general municipal law provisions.

It is axiomatic that a notice of claim is required for suits brought against a municipal employee in instances where the municipality is obligated by law to indemnify such employee. See N.Y. Gen. Mun. Law § 50-e(1)(b). "The obligation to indemnify depends on whether the individual defendants were acting within the scope of their employment when they committed

16

the alleged misdeeds." Zwecker v. Clinch, 720 N.Y.S.2d 150, 152 (2d Dep't 2001) (*citing* International Shared Services, Inc. v. County of Nassau, 634 N.Y.S.2d 722, 724 (2d Dep't 1995)). As in McCormack v. Port Washington Union Free School District, 625 N.Y.S.2d 57, 58-59 (2d Dept. 1995), taking the plaintiff's allegations herein at face value, the individual defendants were clearly acting within the scope of their employment. Further, plaintiff alleges that these individuals were acting in their official capacity at the time of the salient events herein. As such, a notice of claim was required.

N.Y. Gen. Mun. Law § 50-e requires that a Notice of Claim be filed within ninety days of the incident giving rise to the claim. A plaintiff must plead in the complaint that: (1) the Notice of Claim was served; (2) at least thirty days has elapsed since the Notice of Claim was filed and before the complaint was filed; and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim. See N.Y. Gen. Mun. Law § 50-i. Under § 50-i, unless the plaintiff has complied with the Notice of Claim requirement, the action cannot commence. "Notice of claim requirements are construed strictly by New York state courts." AT & T v. N.Y. City Dep't of Human Res., 736 F.Supp. 496, 499 (S.D.N.Y.1990). "Absent a showing of such a Notice of Claim, the complaint may be dismissed for failure to state a cause of action." Brown v. Metro. Transp. Auth., 717 F.Supp. 257, 259 (S.D.N.Y.1989) (*citing* Wrenn v. N.Y. City Health & Hosps. Corp., 104 F.R.D. 553, 557 (S.D.N.Y.1985)). The burden is on the plaintiff to demonstrate compliance with the Notice of Claim requirement. Rattner v. Planning Comm'n of Vill. of Pleasantville, 156 A.D.2d 521, 548 N.Y.S.2d 943 (2d Dept. 1989). Here, plaintiff has failed to plead compliance with the General Municipal Law and as such, the state law claims included in the second amended complaint must be dismissed.

Further, given the fact that more than a year and ninety days has expired since the plaintiff's claims accrued, these state law claims against the defendants are now time-barred. An application for an extension to file a late notice of claim or to amend an earlier notice of claim

17

may be made before or after commencement of the action but not more than one year and 90 days after the cause of action accrued, unless the statute has been tolled. McKinney's General Municipal Law § 50; Pierson v. City of New York, 56 N.Y.2d 950, 439 N.E.2d 331 (1982). Where the time for filing a notice of claim without court approval has expired and no application for an extension was made prior to expiration of the statute of limitations, the court lacks power to authorize late filing of the notice. McKinney's General Municipal Law § 50-e, subd. 5.  To permit a court to grant an extension after the Statute of Limitations has run would, in practical effect, allow the court to grant an extension which exceeds the Statute of Limitations, thus rendering meaningless that portion of section 50-e which expressly prohibits the court from doing so. With the expiration of the period of limitations comes the bar to any claim. Pierson, *supra*.  Additionally, to the extent that plaintiff seeks to serve a late notice of claim herein, state law clearly provides that such an application must be brought in Supreme Court or County Court. General Municipal Law § 50–e (7).

It should also be noted that, notwithstanding plaintiff's failure to file a notice of claim, a claim for intentional infliction of emotional distress is not cognizable against the municipal defendants herein.  Public policy bars claims for intentional and negligent infliction of emotional distress against government entities.  *See* Ralin v. City of New York, 44 A.D.3d 838 (2d Dep't 2007); Wyllie v. District Attorney of County of Kings, 2 A.D.3d 714 (2d Dep't 2003); Liranzo v. New York City Health and Hospitals Corp. et al, 300 A.D. 2d 548 (2d Dep't 2002).

### POINT VII

### PLAINTIFF DOES NOT HAVE A CLAIM FOR DENIAL OF SPEEDY TRIAL TIME

Plaintiff's sixth claim should be dismissed as well, as there is no 1983 claim for denial of speedy trial time.  Section 30.30 is merely a state law provision requiring the prosecution to be ready for trial, a § 30.30 claim does not raise a federal constitutional claim." Cadilla v. Johnson,

119 F.Supp.2d 366, 372–74 (S.D.N.Y.2000) (collecting cases). Section 30.30 is a statutory time frame in which the People of the State of New York must be ready for trial; Section 30.30 is not, as such, a statutory embodiment of the constitutional guarantee to a speedy trial.  Gibriano v. Attorney Gen. of State of N.Y., 965 F. Supp. 489, 492 (S.D.N.Y. 1997). As such, plaintiff does not have an independent §1983 claim for denial of the right to a speedy trial.

Additionally, such claim cannot be asserted against the defendants herein.  Defendants have no control over the prosecution of plaintiff's criminal matter. The Assistant District Attorney, against whom the claim was made, was released from this matter by stipulation between the parties.  Accordingly, plaintiff's Sixth Amendment claim must be dismissed.

## POINT VII

### PLAINTIFF'S CLAIMS AGAINST THE TOWN OF SOUTHAMPTON POLICE DEPARTMENT SHOULD BE DISMISSED

A municipal police department is not susceptible to suit because it is a sub-unit or agency of the municipal government, which fulfills the municipality's policing function. Walker v. U.S. Marshals, 2009 WL 261527 (E.D.N.Y., February 4, 2009). "Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued." Hall v. City of White Plains, 185 F.Supp.2d 293, 303 (S.D.N.Y.2002); *see also* Kamholtz v. Yates County, No. 08-CV-6210, 2008 WL 5114964, at *8-9 (W.D.N.Y. Dec. 3, 2008) (dismissing claims against the Yates County Sheriff's Department on the ground that a municipality's police department is not subject to suit because it is considered an administrative unit of the county); Jones v. Waterbury Police Dep't, No. 3:04CV2137, 2005 WL 1185723, at *2 (D.Conn. May 12, 2005) (dismissing all § 1983 claims against Waterbury Police Department "because a municipal police department is not an independent legal entity"); Nicholson v. Lenczewski, 356 F.Supp.2d 157, 164 (D.Conn.2005)

(collecting cases); Baker v. Willett, 42 F.Supp.2d 192, 198 (N.D.N.Y.1999) ("A police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity."); Willard v. Town of Hamburg, No. 96-CV-0187E(H), 1996 WL 607100, at *1 (W.D.N.Y. Sept. 30, 1996) (dismissing claims against the police department and the town board because they do not "exist separate and apart from the Town and they do not have their own legal identities.")

                Respectfully submitted,

                /S/

                Jeltje deJong (JD/4452)
                Attorney for the Defendants

Cc:  Steve Krawitz, Esq.
     Attorney for the Plaintiff  (VIA ECF)